PATRICIA J. VESCO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vesco v. Commissioner
Docket No. 8873-73.
United States Tax Court
T.C. Memo 1979-374; 1979 Tax Ct. Memo LEXIS 150; 39 T.C.M. (CCH) 144; T.C.M. (RIA) 79374; September 13, 1979, Filed Myles J. Sachs, Robert D. Foglia, Harold Unger and JOSEPH @A. Foglia, for the petitioner. Agatha L. Vorsanger, William J. Salica, Bernard S. Mark and Joseph T. Chalhoub, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1971 in the amount of $775,310 and an addition to tax under section 6653(a), I.R.C. 1954, [1] in the amount of $38,765.50. Since the parties have stipulated that petitioner will be bound as to the amount of her tax liability in this case by the determination of *151 the Court in the case of Robert L. Vesco v. Commissioner , Docket No. 8872-73 (T.C. Memo. 1979-369, filed September 11, 1979), the only issue for decision is whether petitioner should be relieved of liability for the tax and addition to tax for the year 1971 under the provisions of section 6013(e)(1). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. [2]
Petitioner, who at the time of filing of the petition in this case resided in Nassau, N.P., Bahamas and San Jose, Costa Rica, filed a joint Federal income tax return with her husband, Robert L. Vesco, for the taxable year 1971 with the District Director of Internal Revenue, Newark, New Jersey. This return was prepared by an accountant with the firm of Lybrand, Ross Bros. & Montgomery and was signed by petitioner in June 1972. The return reported income from salaries of $115,000, income from *152 dividends of $8,983, interest income of $17,083, and income other than wages, dividends and interest as a loss of $1,033. The amount of $1,033 consisted of a claimed capital loss of $1,000 and a loss of $33 from a partnership. The capital loss of $1,000 was arrived at by a reported capital gain of $233,688.63 from the sale of 35,000 shares of stock of International Controls Corporation (ICC), which was offset by capital losses of $6,180.90 and $4,136 from sales of stock not here in issue, a capital loss from a reported sale of 1,000 shares of Executive Financial, A.G. of $187,626 and a capital loss carryover of $47,970. Because of the provisions with respect to limitation on deductions of long-term capital losses, the resultant loss of $12,224.27 was used to reduce income as reported on the return only to the extent of $1,000. Respondent in his joint notice of deficiency to petitioner and her husband determined an understatement of income of $1,001,350.73 and in addition disallowed the $187,626 loss claimed in connection with the sale of the stock of Executive Financial, A.G. and the claimed loss carryover of $47,970. In our opinion in the case of Robert L. Vesco v. Commissioner *153 , Docket No. 8872-73 (T.C. Memo. 1979-369, filed September 11, 1979), we have determined that the income of petitioner and Mr. Vesco was understated for the year 1971 by various amounts which in total well exceed 25 percent of the income reported by petitioner and her husband on their Federal income tax return for 1971. All of the amount omitted from gross income which was properly includable as income by petitioner and her husband in 1971 is attributable to Robert L. Vesto. Petitioner and Robert L. Vesco was married in 1953. At the time of their marriage petitioner was 17 years old and so was her husband. Neither petitioner nor her husband had at the time of their marriage graduated from high school. Petitioner never completed her formal high school education. When she was first married, petitioner worked for a while as a clerk for an insurance company. Since the early years of her marriage, petitioner has not been employed outside her home. Petitioner and her husband at the time of the trial of this case had five children. The oldest child was born within a year after petitioner and her husband were married and the youngest child was born in late 1975. Prior to 1966, *154 petitioner and her husband had only one checking account, which was a joint account. Petitioner wrote checks on this account to pay the household and family expenses and generally had the responsibility for keeping the checkbook with respect to this account. In 1966, petitioner's husband took the checkbook with respect to this account to his office and, although the account remained a joint account, thereafter petitioner never wrote checks on the account. Some time during 1966, Mr. Vesco authorized his secretary, Ms. Bailey, to write out and sign checks on this account (hereinafter referred to as the Robert regular account) and turned over the responsibility of keeping the checkbook to Ms. Bailey. The Robert regular account was used by Ms. Bailey to pay normal household bills of the Vescos and other items at the direction of Mr. Vesco. In 1969 a checking account was opened in petitioner's name and was used by petitioner to pay ordinary household expenses and personal items (hereinafter referred to as the household special account). This account was also a joint account, but Mr. Vesco did not customarily draw checks on this account and in fact never drew but one check on the *155 account. That check was drawn on the account by Mr. Vesco in 1972. During 1971, petitioner and her husband also had an account which was used primarily to pay bills with respect to the remodeling and decorating of their home (hereinafter referred to as the decorating account). Petitioner never drew checks on this account. In addition, Mr. Vesco had an account at the Bank Cantrade in Switzerland, but this was not a joint account and petitioner had no authority to draw checks on this account. The funds placed in the household special account came primarily from the Robert regular account, although in 1972 a $20,000 check of ICC was deposited in this account. This deposit was made to cover a part of the only check Mr. Vesco ever wrote on this account which was a $25,800 check written in Florida to pay for two paintings he purchased at a Wildlife auction at Palm Beach. In December 1972 a fourth bank account was opened in the joint names of petitioner and her husband with a $28,000 check which came from the Robert regular account. Prior to 1967, petitioner, her husband and their children lived in a home in a development on a half acre lot which consisted of three bedrooms, *156 a family room, a living room and a kitchen. In 1967, petitioner, her husband and their children moved into a large suburban home located on three acres of land in Boonton, New Jersey. Prior to moving in they made an addition to the home. After moving into the home, petitioner and her husband acquired 70 to 80 acres of contiguous land and made improvements to the home, including a swimming pool, a stocked lake, a riding stable with horses and a heliport. Most of these improvements were made prior to 1971 but there was work still being done on the home in 1971. Between 1961 and 1970, petitioner had accompanied her husband on trips to Europe approximately 10 times. Petitioner had traveled with her husband within the United States approximately 25 times on a Gulfstream airplane owned by ICC prior to the time in June of 1971 when ICC acquired a Boeing 707 airplane. During 1971, petitioner's husband, Robert L. Vesco, was the chairman of the board of directors and chief executive officer of ICC. The Boeing 707 which ICC acquired in June 1971 was actually owned by Skyways leasing Corporation, a wholly owned subsidiary of Fairfield General Corporation which was a wholly owned subsidiary *157 of ICC. The plane was purchased by Skyways Leasing Corporation for the use of ICC and was leased to ICC. Thie plane was available for the use of Robert Vesco at his discretion. In 1970, petitioner began having arguments with her husband about the amount of traveling he did while she stayed at home. After these discussions with her husband regarding the amount of time he was away from home, petitioner began accompanying him on a number of his trips.During the last half of 1971, petitioner accompanied Robert Vesco on at least 20 trips on the Boeing 707. While on these trips petitioner's activities were purely personal. Petitioner's four children and three of their friends accompanied petitioner and Mr. Vesco on several trips aboard the 707.When on these trips, the children's activities were purely personal. The children, as well as petitioner, accompanied Mr. Vesco aboard the 707 on a trip from Geneva to Amsterdam and back to Geneva in the summer of 1971. Thereafter the children were flown from Rome to Geneva, from Geneva to London and from London home aboard the 707. In November 1971, petitioner and her husband took an around-the-world trip in the 707. It was the parctice *158 of the Vesco family to take a vacation starting the day after Christmas. On December 26, 1971, the Vesco family used the 707 to travel to Nairobi, Kenya to take a safari vacation. During 1971, ICC paid for restaurant charges, country club dues and expenses and athletic club dues and expenses on behalf of Mr. Vesco. Petitioner used these clubs and restaurants for personal purposes. ICC also paid hotel, limousine service, helicopter service, American Express card and car rental agency charges on behalf of Mr. Vesco. The hotel charges and the charges to Mr. Vesco's American Express care which were paid for by ICC included charges for hotels and restaurants used by petitioner and by the Vesco children when they accompanied Mr. Vesco on trips. Petitioner used the limousine service paid for by ICC for personal trips for shopping and used the helicopter service paid for by ICC for trips into New York. She and her children used this helicopter service to travel to New York airports. During 1971, Mr. Vesco drew cash advances of $68,000 from ICC. Over half of this amount was spent on travel expenses for petitioner and the Vesco children when they accompanied Mr. Vesco on trips. *159 When petitioner was traveling with her husband on the 707, she would at times meet other officials of ICC on the plane with whom she would talk and at times she would hear discussions between her husband and these officials. Petitioner was not directly connected with any of her husband's businesses and was not aware of the details of his business activities. Petitioner and her husband filed joint Federal income tax returns for a number of years prior to 1971 which had been prepared by a CPA connected with a large accounting firm. Beginning in 1967 and extending through 1971, a number of certificates of deposit in various banks were issued to Robert or Patricia Vesco or to Robert and Patricia Vesco in denominations ranging from $100,000 to $500,000. During 1971, petitioner and her husband had outstanding at any one time approximately $800,000 in such certificates. Ms. Bailey usually took care of having these certificates rolled over into new certificates when they came due. Petitioner was aware prior to June of 1972 when she signed the joint 1971 tax return of the various newspaper articles and television reports concerning her husband's activities in connection with ICC and *160 IOS. She was also aware of his having been arrested and put in jail in Geneva. It was not until later that she became aware of the specific civil and criminal charges brought against her husband. OPINION Section 6013(e) [3] provides that where a joint return has been filed by a husband and wife and there is omitted from income an amount properly includable therein in excess of 25 percent of the amount of gross income reported, which income is attributable to one spouse, the other spouse shall be relieved of liability for tax including interest, penalties, and other amounts for such taxable year if certain specific conditions are met. These conditions are that the spouse claiming the benefit of section 6013(e) establish that in signing the return he or she did not know and had no reason to know of such an omission, and that taking into account whether or not the other spouse specifically benefited directly or indirectly from the items omitted from gross income and all facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax attributable to the omission. The relief is limited to the amount of the deficiency attributable to the omitted *161 income. It does not extend to the portion of the deficiency attributable to disallowed deductions. *162 As has been pointed out in a number of cases, there are three conditions to be met in order for the provisions of section 6013(e) to become applicable and the taxpayer has the burden to establish that all three, and not just one, of these are met. Adams v. Commissioner,60 T.C. 300, 303 (1973), and cases there cited. The first condition to be established by the spouse claiming relief under section 6013(e) is that there is omitted from the gross income shown on the joint return an amount properly reportable in excess of 25 percent of the amount of gross income reported and that the omitted income is attributable to the other spouse. Because of the conclusions we have reached with respect to the underreporting of income in the case of Robert L. Vesco v. Commissioner, Docket No. 8872-73 (T.C. Memo. 1979-369, filed September 11, 1979), this condition has been met in this case. The other two conditions that must be met are that the spouse claiming the benefit of section 6013(e) in signing the return (1) did not know of and had no reason to know of such omission, and (2) that, taking into account whether the other spouse significantly benefited directly or indirectly *163 from the items omitted from gross income and all other facts and circumstances, it is inequitable to hold the other spouse liable for a deficiency. From the facts in this case it is difficult to determine to what extent petitioner knew or reasonably should have known of the omissions from gross income on the joint return. Her husband received $90,000 of the omitted income because of the use of the Boeing 707 plane of ICC for primarily personal trips on which petitioner and the Vesco children accompanied him. Most of the balance of the omitted income was received by petitioner's husband from the payments made by ICC of his personal bills and cash advances made to him by ICC which were spent for his personal benefit and the benefit of his family. From the record as a whole, we conclude that petitioner did not know and had no reason to know of the payments of personal bills of her husband's by ICC or cash advances made to him by ICC. The situation with respect to Mr. Vesco's personal use of the 707 airplane is different. Petitioner testified that she thought every trip on which she or her family flew on the 707 was a business trip of her husband's on which she and the family *164 were accompanying him. Certainly petitioner must have known that some of these trips were primarily vacation trips, although she may well have thought, as she testified, that her husband transacted some business on these trips and it may be that he did in fact transact some small amount of business. This record does not show the amount of business, if any, he did actually transact on some of these trips. Petitioner argues that in any event she would not have known that any amount would have been includable in her husband's income on account of the use of the 707. However, as pointed out in Quinn v. Commissioner,62 T.C. 223, 230 (1974), if the spouse has full knowledge of the facts, the requirement of the statute has not been met merely because the individual claiming to be an innocent spouse does not understand the law which causes the amount to constitute income. In this case it is unnecessary to decide whether petitioner reasonably should have known of the omission of part of her husband's gross income from their joint tax return since, in our view, the record is clear that petitioner did significantly benefit from the omitted income and, considering all the *165 facts and circumstances here present, it would not be inequitable to hold petitioner liable for the deficiency. As heretofore stated, in order to show that section 6013(e) is applicable a taxpayer must show that all three of the required conditions of that section are met. Fox v. Commissioner,61 T.C. 704, 716 (1974). Petitioner's argument that she did not significantly benefit from the omitted income primarily centered on the amount of available funds her husband had with which to support her and their children. She argues that, considering the family means, the trips they took and the way they lived were not lavish. Petitioner, however, misses the point. Section 6013(e) specifically states "taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income * * *." [Emphasis supplied.] Here, clerly petitioner directly benefited from the items omitted from gross income. She was on the vacation trips on which the 707 was flown primarily for the personal benefit of her husband, Mr. Vesco. The clear indication from the record is that a large portion of the payments made on behalf of *166 Mr. Vesco by ICC and the advances of cash drawn by Mr. Vesco from ICC were spent directly on the expenses incurred by petitioner and the Vesco children when they accompanied Mr. Vesco on these trips. Petitioner directly benefited from her vacation trips and certainly she indirectly benefited from the vacation trips of her children. Furthermore, all the other facts in the record indicate that it would not be inequitable to hold petitioner liable for the taxes arising from the omitted income.
The record shows a number of certificates of deposit in the name of Mr. Vesco and/or petitioner. It also shows that petitioner and her husband are living comfortably, perhaps lavishly, in Costa Rica. Considering petitioner's testimony that except for a short while when she and Mr. Vesco were first married she has never worked, all of these amounts have come from funds produced through Mr. Vesco's activities. The record shows that several indictments are outstanding against petitioner's husband and a reasonable inference is that it is for this reason petitioner and her husband choose to live in Costs Rica. The record also shows civil suits and judgments against petitioner's husband and a reasonable *167 inference is that it is for this reason that most of the assets of petitioner's husband cannot be located in the United states. Petitioner understandably chooses to reside with her husband and her children in Costa Rica. However, considering the reasons for their living in Costs Rica, the fact that petitioner's husband has apparently removed all assets he was able to remove from the United States and that any assets which pettioner has apparently came by way of funds arising from her husband's activities, it is certainly not inequitable to hold her liable for the tax involved in this case and in fact she should be held liable. Because of adjustments made in the case of Robert L. Vesco v. Commissioner,T.C. Memo. 1979-369, filed September 11, 1979, which requires a recompuation of the tax liability of petitioner in this case, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
2. Paragraph 3 of this stipulation was that "The stipulation of facts, exhibits submitted herewith, the testimony offered and the exhibits accepted in evidence in Robert L. Vesco vs↩. Commissioner of Internal Revenue, Docket No. 8872-73, shall be deemed part and parcel of the record herein."
3. Section 6013(e)(1) provides as follows: SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. * * *
(e) Spouse Relieved of Liability in Certain Cases.-- (1) In general. Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.↩